## A89A1682. REEB v. DANIELS LINCOLN-MERCURY COMPANY, INC.
(389 SE2d 367)

SOGNIER, Judge.

Barbara J. Reeb brought suit against Daniels Lincoln-Mercury Company, Inc. (Daniels) in several counts to recover damages she incurred when she revoked her acceptance of a demonstrator automobile soon after she had purchased it. Daniels answered and counterclaimed for its unrecovered expenses in repurchasing and reselling the car. The case was tried by a jury, and after the close of Reeb's evidence the trial court granted Daniels' motion to dismiss the complaint. After hearing further evidence, the trial court directed a verdict for Daniels on its counterclaim. Reeb appeals.

The record reveals that on August 12, 1987, appellant went to appellee's premises to look at cars. She was interested in a 1987 Mercury Sable, and was shown several demonstrator automobiles. Although she particularly liked a brown model, she was unable to drive that car because it was being worked on in the shop, and she test drove a similar car instead. A salesman told her the car she was inter-

ested in was a demonstrator; that it had been driven for over 12,000 miles and was a "bug-free car." She purchased the 1987 brown Mercury Sable demonstrator and picked it up several days later. As she was driving the vehicle home, she noticed the "front end pulling and clicking and doing some funny things" and, concluding there was something wrong with the car, she turned around and went back to the dealership, only to find it was closed. The next morning a service department representative test drove the car and told her "it's got a broken rack and pinion," at which time appellee's employees had her sign a paper ordering a part for the car. Although appellant testified the steering was not working properly and she was concerned about driving the car, she continued to drive it until September 18, 1987. Between the time she was told the rack and pinion was broken and September 18, 1987 there were "[a] few phone calls" between appellant and various people at appellee's dealership. Appellant also testified that she had several mechanics look at it and then, on September 18, 1987 she "quit driving it" and revoked her acceptance.

Appellee's president, William Daniels, testified that appellee had an agreement with the bank with which appellant financed the purchase of her car that if litigation ensued the dealership was required to repurchase the car. Daniels testified he paid the bank $14,750.78 for the car and resold it for $13,000, and that other expenses were incurred, with the total loss amounting to $2,310.78. Appellant presented no evidence as to the counterclaim.

1. Appellant contends the trial court erred by dismissing her complaint. We note initially that although appellee moved to dismiss the complaint and the trial court granted that motion, the motion was made at the close of appellant's evidence, and the basis for both the motion and the ruling was that the evidence presented failed to support appellant's claims and demanded a verdict for appellee. We will therefore treat the trial court's ruling as the grant of a directed verdict to appellee rather than as a dismissal of appellant's complaint. See OCGA § 9-11-50 (a).

(a) OCGA § 11-2-608 (1) (a) provides that "[t]he buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it . . . [o]n the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured." Revocation of acceptance is an available remedy even where, as here, the dealer has attempted to limit warranties. (See Division 1 (b), infra.) *Jacobs v. Metro Chrysler-Plymouth*, 125 Ga. App. 462 (188 SE2d 250) (1972). Appellant testified without objection that the car she bought was described by appellee's own mechanic as having a broken steering mechanism. She testified, however, that she signed a paper ordering a new part, thus indicating that she nevertheless accepted the car, despite knowledge

of the defect, on the assumption that it would be repaired. See generally *Trailmobile Div. of Pullman v. Jones*, 118 Ga. App. 472, 473-475 (1) (164 SE2d 346) (1968). However, 38 days later the car had not been repaired and appellant was afraid to drive it. Whether the broken rack and pinion was a nonconformity which "substantially impaired" the car's value to appellant, and whether the delay of 38 days in repairing the car was "unseasonable," thereby giving appellant a second opportunity to revoke her acceptance of the car, are not issues that may be decided as a matter of law, but are jury questions. *Hub Motor Co. v. Zurawski*, 157 Ga. App. 850, 851 (1) (278 SE2d 689) (1981). "If there is 'any evidence' creating a material issue of fact, a motion for a directed verdict cannot be granted. [Cits.]" *Professional Ins. Svcs. v. Sizemore Elec. Co.*, 188 Ga. App. 463 (1) (373 SE2d 276) (1988). There were material issues of fact in this case surrounding appellant's revocation of acceptance, and we agree with appellant that as to that cause of action the trial court's grant of a directed verdict to appellee was erroneous. See generally id. at 463-464 (1).

(b) In her complaint appellant also alleged fraud and breach of warranty as bases for recovery. Appellant maintained that appellee had knowingly made several false representations to her. We agree with the ruling and the reasoning of the trial court that there was no evidence that appellee had represented the car as new or as anything other than a demonstrator model with 12,000 miles, and that appellee's salesman's statements to appellant that it was a "bug-free car" and that it was a better buy than other cars were "puffing" and thus not actionable fraud. See generally *Randall v. Smith*, 136 Ga. App. 823, 824-825 (222 SE2d 664) (1975). Appellant also alleged that appellee had breached its warranty in that the car had serious defects. However, it is clear that appellee disclaimed all warranties, as the invoice recited that "[a]ny warranties on the products sold hereby are those made by the manufacturer. The seller, [appellee], hereby expressly disclaims all warranties, either express or implied, . . . and [appellee] neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products." Accordingly, as to these two causes of action we affirm the trial court's grant of a directed verdict to appellee. See generally *First Ga. Leasing v. First Ga. Bank*, 188 Ga. App. 847, 848 (1) (374 SE2d 751) (1988).

2. If appellant properly revoked her acceptance of the automobile, appellee would not be entitled to recover the difference between its expenses and the resale price of the car. See OCGA §§ 11-2-608 (3); 11-2-602 (2) (c). Accordingly, because of our decision in Division 1 (a) that appellant's cause of action based on revocation of acceptance must be retried, the counterclaim must be retried as well.

3. Appellant contends the trial court erred by excluding the en-

tire testimony of her witness Sam Meggs. Appellant sought to introduce the deposition testimony of Meggs, a mechanic to whom she had brought the car for evaluation. The testimony was objected to by appellee, and the trial court sustained the objection on the basis that Meggs was not qualified to give an opinion about the steering mechanism on the car, since Meggs had testified he knew nothing about rack and pinion steering. Appellant does not except to that portion of the ruling, but maintains that portions of Meggs' testimony, in which he described his observations when he drove the car, should have been admitted. While such testimony might have been admissible, Meggs' observations were cumulative of appellant's observations, which were testified to by appellant, and a trial court may properly exercise its discretion in deciding whether to admit cumulative evidence. See *Dept. of Transp. v. Delta Machine &c. Co.*, 157 Ga. App. 423, 426 (3) (278 SE2d 73) (1981). The exclusion of evidence which is merely cumulative is not error even where the trial court's reasoning in excluding it may have been erroneous. *Hale v. Parmenter Ins. Agency*, 150 Ga. App. 76, 77 (2) (256 SE2d 623) (1979).

4. Because portions of this case must be retried, the costs after retrial may be entirely different. However, we note that OCGA § 15-6-77 (b) (3) permits the recovery by the clerk of "any other costs authorized by law for postjudgment proceedings or for any other services which the clerk . . . shall perform." We note also that microfilming records is specifically "authorized" by OCGA § 15-6-87 (a). Accordingly, we find no merit in appellant's contention that the trial court erred by allowing the clerk to assess microfilming costs.

*Judgment affirmed in part and reversed in part. Banke, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 21, 1989 —
REHEARING DENIED DECEMBER 5, 1989.

*Allen W. Johnson*, for appellant.
*Isaac S. Jolles*, for appellee.