**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**June 3, 2020**

# In the Court of Appeals of Georgia

A20A0645. VILLALOBOS v. ATLANTA MOTORSPORTS SALES, LLC.

MILLER, Presiding Judge.

Soon after Jenry Villalobos bought a used pickup truck from Atlanta Motorsports Sales, LLC, the vehicle experienced mechanical issues, leading Villalobos to bring this lawsuit alleging fraud, rescission, revocation of acceptance, and violations of multiple Georgia statutes. Villalobos appeals from the trial court's entry of a judgment on the pleadings, arguing that the trial court erred in concluding that his claims were precluded by the sales contract's merger clause and a contractual disclaimer that he was purchasing the truck "as is." We agree with the trial court that judgment on the pleadings was proper on Villalobos' claims for rescission and fraud because he could not justifiably rely on oral misrepresentations that contradicted the

terms of the contract. We also determine, however, that Villalobos properly stated a claim for revocation of acceptance, and so the entry of judgment on the pleadings was improper on this claim. We therefore affirm in part and reverse in part.

> On appeal from a grant of judgment on the pleadings, we conduct a de novo review of the trial court's order to determine whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. The grant of a motion for judgment on the pleadings under OCGA § 9-11-12 (c) is proper only where there is a complete failure to state a cause of action or defense. For purposes of the motion, all well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false. But the trial court need not adopt a party's legal conclusions based on these facts. Moreover, in considering a motion for judgment on the pleadings, a trial court may consider exhibits attached to and incorporated into the pleadings, including exhibits attached to the complaint or the answer. Nevertheless, we are mindful that a motion for judgment on the pleadings should be granted only if the moving party is clearly entitled to judgment.

(Citations and punctuation omitted.) *BCM Constr. Group, LLC v. Williams*, ___ Ga. App. ___ (840 SE2d 51) (Feb. 21, 2020).

According to Villalobos' complaint, he purchased a 2008 Ford F-150 from Atlanta Motorsports in January 2019. While at the dealership, Villalobos "made [a]

2

direct inquiry about the [truck's] history," the salesman represented that the pickup truck "was in good condition," and when Villalobos went on a test drive, "it was represented to him as a good running truck with no problems." After Villalobos purchased the truck, Atlanta Motorsports informed him that the truck had an oil leak, and Villalobos noticed a "major oil puddle" in his driveway on the day he took the truck home. Villalobos took the truck to a mechanic who informed him that the cost of the repairs exceeded the value of the truck. Villalobos attempted to return the truck to Atlanta Motorsports, which refused. Villalobos also revoked his acceptance by oral communication and by letter, but Atlanta Motorsports refused to honor his revocation.

Villalobos brought the instant lawsuit, raising claims of fraud, rescission of the contract, revocation of his acceptance, and violations of the Georgia Fair Business Practices Act (OCGA § 10-1-391 et seq.) ("FBPA") and the Georgia Used Car Dealer Act (OCGA § 43-47-1 et seq.). Atlanta Motorsports answered the complaint and attached to its answer a copy of the contract and bill of sale. The contract contained the following clause, which Villalobos separately signed:

> Page one and page two of this agreement, together with any installment
> sale agreement, arbitration agreement and any other documents signed

3

in connection with this transaction, shall constitute the entire agreement between the parties pertaining to the subject matter hereof and supersede all prior agreements, undertakings, negotiations and discussions, whether oral or written, of the parties. This agreement cannot be modified except by a written instrument executed by the parties. Buyer acknowledges that Buyer is not relying on any representation that is not contained in this Agreement.

The contract also provided the following disclaimer in capital letters and boldface type:

Unless a limited warranty is provided in writing to Buyer, the vehicle is sold "as is" with no warranty, the only warranties applying to this vehicle are those supplied by the manufacturer, if any. The seller hereby expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability or fitness for a particular purpose. . . .

The contract further provided that the truck was subject to a "buyer's guide." The buyer's guide also noted in large typeface that the truck was being bought "as is - no dealer warranty." The buyer's guide contained the statement, "Ask the dealer if your mechanic can inspect the vehicle on or off the lot," and it included a list of "some major defects that may occur in used vehicles," which included oil leakage.

4

Atlanta Motorsports then moved for a judgment on the pleadings, arguing in part that the merger clause and the disclaimer in the contract prevented Villalobos from justifiably relying on any oral representations that did not become part of the written contract, and all of his claims therefore failed as a matter of law. The trial court granted Atlanta Motorsports' motion and dismissed all of Villalobos' claims. The trial court concluded that the terms of the contract, particularly the merger clause and the acknowledgment that Villalobos was purchasing the vehicle "as is," precluded Villalobos from arguing that he justifiably relied on any alleged extracontractual misrepresentations. This appeal followed.

1. In three related enumerations of error, Villalobos argues that the trial court erred in determining that the terms of the contract could defeat his claims for fraud, rescission, and fraud under the FBPA. In particular, Villalobos argues at length that the trial court's decision runs afoul of the Supreme Court of Georgia's decision in *City Dodge, Inc. v. Gardner*, 232 Ga. 766, 770 (208 SE2d 794) (1974), and its progeny. We conclude that the alleged extracontractual representations on which Villalobos seeks to rely are statements of opinion that are not actionable as fraud. Thus, regardless of whether the terms of the contract would have precluded any claims for fraud based on extracontractual misrepresentations, the trial court properly

5

granted judgment on the pleadings on Villalobos' claims stemming from his allegations of fraud.

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." (Citation and emphasis omitted.) *Lehman v. Keller*, 297 Ga. App. 371, 373 (2) (677 SE2d 415) (2009). Here, Villalobos alleged in his complaint that he unsuccessfully attempted to return the truck, and his complaint clearly indicates that he has chosen to rescind the contract and sue for fraud. "Having elected to seek rescission and pursue a claim for fraud, [Villalobos is] required to prove that [Atlanta Motorsports] through misrepresentation, act, or artifice intentionally induced [him] to sign the Agreement and that [he] justifiably relied on the misrepresentation, act, or artifice, being reasonably diligent in the use of the facilities at [his] command." (Citation and punctuation omitted.) *Legacy Academy, Inc. v. Mamilove, LLC*, 297 Ga. 15, 17 (1) (771 SE2d 868) (2015).

> Whether it was reasonable for one to rely upon a certain misrepresentation is generally a question for a jury, although in some cases, the answer may appear so clearly that the question can be decided by a court as a matter of law. For instance, when one has entered a

6

contract with a binding and comprehensive merger clause, any reliance upon precontractual representations is, generally speaking, unreasonable as a matter of law. Likewise, when one is bound by a contract that includes terms that expressly, conspicuously, unambiguously, and squarely contradict precontractual representations, any reliance upon those precontractual representations may be deemed unreasonable as a matter of law.

(Citations omitted.) *Raysoni v. Payless Auto Deals, LLC*, 296 Ga. 156, 157 (766 SE2d 24) (2014).

To understand Villalobos' argument, we must provide a brief history of our case law in this area. In *City Dodge*, the main case relied upon by Villalobos, the Supreme Court of Georgia upheld a jury verdict concluding that a used car dealer had made a fraudulent oral misrepresentation that the car being sold "had never been wrecked." 232 Ga. at 767. The contract between the parties had a comprehensive merger clause and a clause that the buyer was purchasing the car "as is." Id. In response to the seller's argument that these clauses precluded the buyer's fraudulent misrepresentation claim, the Supreme Court held that "the question of reliance on the alleged fraudulent misrepresentation in tort cases cannot be determined by the provisions of the contract sought to be rescinded but must be determined as a question of fact by the jury." Id. at 770. The Supreme Court explained further:

7

It is inconsistent to apply a disclaimer provision of a contract in a tort action brought to determine whether the entire contract is invalid because of alleged prior fraud which induced the execution of the contract. If the contract is invalid because of the antecedent fraud, then the disclaimer provision therein is ineffectual since, in legal contemplation, there is no contract between the parties.

Id. See also, e.g., *Akins v. Couch*, 271 Ga. 276, 278 (3) (a) (518 SE2d 674) (1999) (relying on *City Dodge* to summarily reject an argument that the "various clauses in the sales agreement" precluded a claim for rescission based on fraudulent concealment); *Crews v. Cisco Bros. Ford-Mercury, Inc.*, 201 Ga. App. 589 (411 SE2d 518) (1991) (concluding that *City Dodge* "laid to rest the contention that a merger clause in a contract being attacked for fraud precludes proof that a contract was fraudulently induced); *Reilly v. Mosley*, 165 Ga. App. 479 (301 SE2d 649) (1983) (relying on *City Dodge* to conclude that "as is" language in a contract did not preclude the appellant from showing justifiable reliance on a precontractual misrepresentation).

In the Supreme Court case relied on by the trial court, *Novare Group, Inc. v. Sarif*, 290 Ga. 186 (718 SE2d 304) (2011), the Supreme Court concluded that a plaintiff was not entitled to rescind a contract because the written contract expressly

contradicted the alleged oral misrepresentations that formed the basis of their claim. Id. at 188-190 (2). The plaintiffs were all purchasers of condominiums and had alleged that the developer had falsely promised them "spectacular city views." Id. at 189 (2). The Supreme Court concluded, however, that this alleged misrepresentation was directly contradicted by the provisions in the contract "that the views may change over time, oral representations of the sellers could not be relied upon, [the plaintiffs] did not in fact rely upon any oral representations or statements of [the sellers], and the entire agreement between the parties was set forth in the terms of the written contract." Id. at 189 (2). The Supreme Court firmly concluded that

> a party who has the capacity and opportunity to read a written contract cannot afterwards set up fraud in the procurement of his signature to the instrument based on [extra-contractual] representations that differ from the terms of the contract. Statements that directly contradict the terms of the agreement or offer future promises simply cannot form the basis of a fraud claim for the purpose of cancelling or rescinding a contract. In fact, the only type of fraud that can relieve a party of his obligation to read a written contract and be bound by its terms is a fraud that prevents the party from reading the contract.

(Citations omitted.) Id. at 188-189 (2). The Supreme Court further concluded that "[t]o be able to rescind a contract, the fraud must be of a nature that the [plaintiffs]

9

were deprived of an opportunity to read the agreements" and that the plaintiffs "[were] not entitled to back out of a written agreement whose terms expressly contradict the oral representations on which Purchasers claim to have relied." Id. at 189 (2). In making its holding, the Supreme Court expressly distinguished its holding from *City Dodge*, noting that the issue of justifiable reliance may be a jury question in a fraud case where no contract exists or where the contract has become void, but that the *Novare Group* plaintiffs were not entitled to rescission as a remedy and so were bound by the terms of the contract. Id. at 190 (3).

In *Raysoni v. Payless Auto Deals, LLC*, 296 Ga. 156 (766 SE2d 24) (2014), the Supreme Court confronted another claim to rescind a contract based on alleged fraudulent misrepresentations. In summarizing the law, the Supreme Court relied on *Novare Group* and other precedent to note that the issue of whether a plaintiff reasonably relied upon a misrepresentation "may appear so clearly that the question can be decided by a court as a matter of law." Id. at 157. The Supreme Court noted that

> [f]or instance, when one has entered a contract with a binding and comprehensive merger clause, any reliance upon precontractual representations is, generally speaking, unreasonable as a matter of law. Likewise, when one is bound by a contract that includes terms that

10

expressly, conspicuously, unambiguously, and squarely contradict precontractual representations, any reliance upon those precontractual representations may be deemed unreasonable as a matter of law.

(Citations omitted.) Id. at 157. The Supreme Court then analyzed the terms of the contract, which involved the purchase of a used car, and concluded that the plaintiff's claim for fraud and rescission based on an inaccurate written Carfax report was not precluded by the terms of the contract. Id. at 160. The Supreme Court first concluded that the contract's purported merger clause only covered oral representations, not written representations such as the written report, and so it was "not a case in which reliance on all precontractual representations was rendered unreasonable as a matter of law by a comprehensive merger clause." Id. at 158. The Supreme Court further analyzed the contract's disclaimer provisions and concluded that they were "not absolute and unequivocal enough to warrant judgment on the pleadings" because the provisions contained language that arguably limited their scope. Id. at 158-159.

In *Legacy Academy, Inc. v. Mamilove, LLC*, 297 Ga. 15 (771 SE2d 868) (2015), the Supreme Court again concluded that a comprehensive disclaimer clause defeated a claim to rescind a contract based on fraudulent inducement as a matter of law. Id. at 17-19 (1). The plaintiff had argued that the defendant had falsely

11

represented the historical earnings of the franchise that the plaintiff purchased from the defendant, but the Supreme Court concluded that it was unreasonable for the plaintiff to rely on such representations because the contract included a disclaimer that the seller did not make any representations about the earnings capability of the franchise, and so their claim to rescind the contract failed as a matter of law. Id. at 16-19 (1). The Supreme Court further concluded that the plaintiff's fraud claim failed as a matter of law because any oral misrepresentations made before the contract could not constitute actionable fraud in light of the contract's comprehensive merger clause. Id. at 19-20 (2). In making its ruling, the Supreme Court distinguished *City Dodge* on the grounds that there was evidence in that case "from which a jury could find that a rescinded contract is void because of antecedent fraud," whereas it did not find any such evidence in *Legacy Academy*. Id. at 20 (2) n.7.

Here, unlike *Raysoni*, the sales contract between the parties contained a comprehensive merger clause that explicitly noted that "[Villalobos] is not relying on any representation that is not contained in this Agreement." Furthermore, the contract contained a unequivocal disclaimer clause noting that Villalobos was purchasing the truck "as is" with no warranty, and that Atlanta Motorsports "hereby expressly disclaims all warranties, either express or implied, including any implied warranties

12

of merchantability or fitness for a particular purpose." This disclaimer in the written contract stands in contradiction to the alleged oral representations that the truck "was in good condition" and was "a good running truck with no problems." See, e.g., *Bill Spreen Toyota, Inc. v. Jenquin*, 163 Ga. App. 855, 856-857 (2) (294 SE2d 533) (1982) ( "The term 'sold as is' means sold in its present condition without any warranty as to soundness of condition or suitability for the purpose intended, and a fraud action cannot rest on a contradictory oral representation.") (citation omitted).[1] Furthermore, Villalobos has not alleged that he was prevented from reading the contract, through fraud or otherwise.

---

[1] We further note that *City Dodge* involved a situation where a seller made an express warranty about the condition of the car, and "'as is' language . . . is ineffective to negate an express warranty." *City Dodge, Inc.*, supra, 232 Ga. at 767. "[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods[,]" however, "does not create [an express] warranty." OCGA § 11-2-313 (2). Putting aside the fact that thie contract in the instant case also contains a purported waiver of any express warranties, we note that the alleged misrepresentations on which Villalobos seeks to rely are near identical to other statements that we have found to constitute such statements of opinion or commendation of the goods. See *Sheffield v. Darby*, 244 Ga. App. 437, 439 (2)-(3) (535 SE2d 776) (2000) (statements that a horse "ha[d] no problems" and "would make a good show horse" were mere expressions of opinion and did not constitute express warranties); *Reeb v. Daniels Lincoln-Mercury Co., Inc.*, 193 Ga. App. 817, 819 (1) (b) (389 SE2d 367) (1989) (statement that a car was a "bug-free car" was mere sales puffery); *Randall v. Smith*, 136 Ga. App. 823, 824-825 (222 SE2d 664) (1975) (statements that car "was in good condition" and "suitable for driving" were mere puffery).

13

This case therefore features the same circumstances as *Novare Group* and *Legacy Academy*, wherein the Supreme Court found that claims for fraud and rescission failed as a matter of law because there was no evidence that the plaintiff could have justifiably relied on the precontractual oral representations. *Legacy Academy, Inc.*, supra, 297 Ga. at 16-20 (1)-(2); *Novare Group*, supra, 290 Ga. at 188-190 (2)-(3). In each of these two cases, the Supreme Court expressly distinguished its holding from *City Dodge* and its progeny, *Legacy Academy, Inc.*, supra, 297 Ga. at 20 (2) n.7; *Novare Group*, supra, 290 Ga. at 190 (3), and we are of course bound by the Supreme Court's explanations of its own precedent. Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI. We therefore conclude that the trial court properly granted a judgment on the pleadings on Villalobos' fraud and rescission claims.

Because Villalobos' FBPA and Used Car Dealer Act claims all stem from his allegations of fraud through these alleged misrepresentations, judgment on the pleadings was also properly entered in Atlanta Motorsports' favor on these claims. See *Novare Group, Inc.*, supra, 290 Ga. at 190 (3) (plaintiff could not justifiably rely on an oral representation that was contradicted by the plain terms of the contract and so judgment on the pleadings was proper in action for rescission, fraud, and fraud under FBPA). See also *Edel v. Southtowne Motors of Newnan II, Inc.*, 338 Ga. App.

14

376, 380 (3) n.4 (789 SE2d 224) (2016) (plaintiff could not maintain a cause of action for fraud or misrepresentation under the Used Car Dealer Act).[2]

2. Villalobos finally argues that the trial court erred in dismissing his claim to revoke acceptance of the contract. We agree with Villalobos that the trial court erred in dismissing this claim because the terms of the contract do not preclude such a claim as a matter of law.

Under Georgia's commercial code, "[t]he buyer may revoke his acceptance of a . . . commercial unit whose nonconformity substantially impairs its value to him if he has accepted it [w]ithout discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." OCGA § 11-2-608 (1) (b). "Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects." OCGA § 11-2-608 (2).

Here, Villalobos alleged that Atlanta Motorsports did not disclose the damage to the truck, the repairs to which he alleged would cost more than its value, until after

---

[2] Because Villalobos did not allege a viable claim for misrepresentation, we do not address Villalobos' argument and separate enumeration of error that the Used Car Dealer Act contains a private right of action to sue for misrepresentations or fraud.

he had signed the contract and purchased the vehicle. Villalobos also alleged that, had he known of the engine's oil leak, he would not have purchased the vehicle. Villalobos further alleged that he committed at least some due diligence by "ma[king] [a] direct inquiry about the [truck's] history" and taking the truck for a test drive before purchase, and he alleged that he notified Atlanta Motorsports of his revocation of acceptance. Furthermore, although the contract contained a provision that Villalobos was purchasing the truck "as is," "[r]evocation is an available remedy even where the seller has attempted to limit its warranties by use of 'as is' language." (Citation omitted.) *Prudential Metal Supply Corp. v. Atlantic Freight Sales Co.*, 204 Ga. App. 439, 440 (419 SE2d 520) (1992).[3] At this early stage in the proceedings, therefore, we cannot conclude that Atlanta Motorsports is clearly entitled to judgment as a matter of law on Villalobos' claim to revoke his acceptance of the truck. See *Mauk v. Pioneer Ford Mercury*, 308 Ga. App. 864, 870 (2) (709 SE2d 353) (2011)

---

[3] To be clear, an "as is" clause is not *entirely* irrelevant to a revocation of acceptance claim. The existence of such a clause is a relevant factor when determining the parameters of the sales agreement and, therefore, whether the seller had actually delivered goods that were "non-conforming." See, e.g., *Bicknell v. B&S Enterprises*, 160 Ga. App. 307, 309 (2) (287 SE2d 310) (1981) (analyzing whether the seller provided goods that conformed to the contract when the contract contained an "as is" clause). As the parties have not argued this point, however, we do not address it further.

16

("Issues such as whether an effective revocation of acceptance was made, whether reasonable notice of revocation was given to the seller, and whether the value of the goods was substantially impaired are ordinarily matters for determination by the trior of fact[.]") (citation omitted).

Accordingly, we conclude that, while the trial court correctly granted judgment on the pleadings as to Villalobos' fraud, rescission, FBPA, and Used Car Dealer Act claims, the trial court erred in granting a judgment on the pleadings on Villalobos' revocation of acceptance claim. We therefore affirm the trial court's judgment in part and reverse in part.

*Judgment affirmed in part and reversed in part. Mercier and Coomer, JJ., concur.*